JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Chester Brame | Brian Reynolds, Jeffrey Walker, Thomas Liciardello, Perry Betts, Jonathan Spesier, Michael Spicer, Linwood Norman, et al |

| (b) County of Residence of First Listed Plaintiff    Philadelphia | County of Residence of First Listed Defendant    Philadelphia |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| David Wesley Cornish, Esquire <br> 1510 Cecil B. Moore Avenue Suite 301 <br> Philadelphia, PA 19121 | Philadelphia City Law Department (Philadelphia City Solicitor) <br> 1515 Arch Street, 14th Floor <br> Philadelphia, PA 19102 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration | | |
| | | ☐ 555 Prison Condition | Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: <br>
42 USC 1983, 18 USC 1985, 18 USC 1964 <br>
Brief description of cause: <br>
Violation of Civil and Constitutionally Guaranteed Rights while Defendants acted under the color of law

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    **DEMAND $** 27,000,000.00    CHECK YES only if demanded in complaint:    JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE Honorable Paul Diamond    DOCKET NUMBER 2:12-CV-05690

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 03/03/2016 | *DDwh* |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Chester Brame                          :          CIVIL ACTION

         v.                          :

Brian Reynolds, et al                  :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )


3/3/16          David W. Cornish  By            Plaintiff ( Chester Brame)
**Date**          **Attorney-at-law**          **Attorney for**

888-313-1385          215-752-6762          cornerstone legal group@ gmail.com
**Telephone**          **FAX Number**          **E-Mail Address**


(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _1312 Fanshawe Street  Philadelphia, PA 19144_

Address of Defendant: _1515 Arch Street, 14TH Floor  Philadelphia, PA 19102_

Place of Accident, Incident or Transaction: _1505 North 18TH Street  Philadelphia, PA_
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐  No☒

Does this case involve multidistrict litigation possibilities?          Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
          Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
          Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
          Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
          Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, _David Wesley Cornish_ ____ , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _3/3/16_          _David W. Cornish_          _310865_
          Attorney-at-Law                              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _3/3/16_          _David W. Cornish_          _310865_
          Attorney-at-Law                              Attorney I.D.#

CIV. 609 (5/2012)

D. Wesley Cornish, Esquire                          **JURY**
Id #: 310865                                        Damage Assessment Required
**Cornerstone Legal Group, LLC**
**1510 Cecil B. Moore Avenue, Suite 301**
Philadelphia, PA 19121                              **Attorney for Plaintiff**

## IN AND FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

*Plaintiff*

Chester Brame,

**CIVIL ACTION**
Case No. _____

VS.

*Defendants*

Brian Reynolds, Jeffrey Walker, Perry Betts, City of Philadelphia, Thomas Liciardello, Linwood Norman, Jonathan Speiser, Michael Spicer, Michael Collins, Christopher Hulmes, Miguel Santiago, Patrick Banning, James Reilly, Robert Otto, Joseph McCloskey, Richard Kurth, Richard Cujdik, Jeffrey Cujdik, Joseph McCauley, Erik Pross, Scott Schweizer, Leroy Ziegler, Shaun Parker, James Weiss, Joseph Lister, Erik Garnett, David Aponte, Kevin Devlin, James Smith, Eric Johnson, Rickman Williams-Jackson, Gregory Barber, Kevin Gorman, Leslie Simmons, Nathan London, Gina Jackson, Steven Ratka, Charles Kapusniak, Vincent Nowakowski, Mark Palma, Frank Bonnett, Joseph Bologna, John O'Hanlon, Thomas Kelly, Thomas Kuhn, Kevin Cuddahy, Thomas Clancy, Shawn Carey, Thomas Tolstoy, Carl Stubbs, Raymond Singleton, Michael Edinger, Christopher Brooks, Thomas Wright, Eric Dial, Stephen Dmytryk, Eric Johnson, Roosevelt Hagins, Carol Harvey, Brant Miles, Robert McDonnell, Jr., Sergeant Guilian, Sergeant DiDonato, Sergeant Love, Philadelphia Police Officer Jones, Police Officer Cooner, Police Officer Cooney, Philadelphia Police Officer Lynch, Philadelphia Police Officer Flynn, Philadelphia Police Officer Seigafuse, Philadelphia Police Officer Hardy, Philadelphia Police Officer A. Viega, Philadelphia Police Officers Jane Doe 1-15, Philadelphia Police Officers John Doe 1-15, Philadelphia Police Chemists John and Jane Does 1-22.

## VERIFIED COMPLAINT

1. Plaintiff Chester Brame ("Brame") by and through counsel, D. Wesley Cornish, Esquire, verify the following complaint.

## INTRODUCTION

2. This is a complex civil action for RICO remedies, among other claims for relief, authorized by the federal statutes at 18 U.S.C. §§ 1961, 1983, 1985 *et seq.*; for actual, consequential, punitive, and exemplary damages; and for all other relief which this honorable Court deems just and proper under all circumstances which have occasioned this complaint. See 18 U.S.C. §§ 1964 (a) and (c) ("Civil RICO").

3. The primary cause of this action is a widespread criminal *enterprise* engaged in a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving numerous RICO predicate acts during the past fifteen (15) calendar years.

4. The predicate acts alleged here cluster around widespread civil and constitutional deprivations committed by the Philadelphia Police Department, the Department's Commissioners and Supervisors, the City of Philadelphia, and many individual officers in particular acts and threats involving murder, kidnapping, dealing in controlled substances, bribery, mail fraud, wire fraud, obstruction of justice, obstruction of criminal investigations, obstructing state and local law enforcement, witness/victim/informant tampering, witness/victim/informant retaliation, interference with commerce, extortion, fraud related to identification documents, fraud related to access devices, returning/holding persons in peonage, and kidnapping to place persons into involuntary servitude.

5. Other RICO predicate acts, although *appearing* to be isolated events, were actually part of the overall conspiracy and *pattern of racketeering activity* alleged herein, *e.g.* mail fraud and wire fraud. See 18 U.S.C. §§ 1341 and 1344, respectively.

6. The primary objective of the racketeering *enterprise* has been to inflict severe and sustained civil rights violations against the citizens of Philadelphia in addition to United States and foreign citizens, illegally traffic controlled substances, illicitly gain money through improperly earned overtime, bonuses, promotions, and court pay, placing citizens in economic and legal hardship to unlawfully compel false and/or privileged testimony, with the intent of impairing, obstructing, preventing and discouraging Plaintiff from reporting and remedying the conduct.

## JURISDICTION AND VENUE

7. This Honorable Court has original jurisdiction pursuant to the civil RICO remedies at 18 U.S.C. §1964.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question) and the Civil Rights Act of 1871, 42 U.S.C. §§1983, 1985, and 1988.

9. This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. §1367.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that Defendants reside in this district and virtually all of the acts described in this Complaint occurred in this district.

## PLAINTIFF

11. Plaintiff is Chester Brame, an individual and resident of the Commonwealth of Pennsylvania and the United States of America, who resides at 1312 Fanshawe Street Philadelphia, Pennsylvania 19144 in the City and County of Philadelphia.

## DEFENDANTS

12. Defendant is **Thomas Liciardello**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

13. Defendant is **Brian Reynolds**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

14. Defendant is **Perry Betts**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

15. Defendant is **Jeffrey Walker**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

16. Defendant is **Michael Spicer**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

17. Defendant is **Jonathan Speiser**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

18. Defendant is **Linwood Norman**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

19. Defendant is **Christopher Hulmes**, badge 7548, a suspended police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

20. Defendant is **Police Officer James Reilly**, Badge Number 1784, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

21. Defendant is the **City of Philadelphia**, a city of the first class, organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, the Philadelphia Home Rule Charter and Philadelphia Code, with offices located at City Hall 1501 Market Street Room 215, Philadelphia, PA 19107.

22. Defendant is **Police Officer Patrick Banning**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

23. Defendant is **Sergeant Didonato**, Badge Number 8543, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

24. Defendant is **Police Officer Joseph McCauley**, Badge Number 5026, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

25. Defendant is **Police Officer Joseph Lister**, Badge Number 7545, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

26. Defendant is **Police Officer Erik Garnett**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

27. Defendant is **Police Officer David Aponte**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

28. Defendant is **Police Officer Kevin Devlin**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

29. Defendant is **Police Officer Cooner**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

30. Defendant is **Police Officer Joseph McCloskey**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

31. Defendant is **Police Officer Nathan London**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

32. Defendant is **Police Officer Gina Jackson**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

33. Defendant is **Police Officer Steven Ratka**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

34. Defendant is **Police Officer Charles Kapusniak**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

35. Defendant is **Police Officer Scott Schweizer**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

36. Defendant is **Police Officer Erik Pross**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

37. Defendant is **Police Officer Vincent Nowakowski**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

38. Defendant is **Police Officer Leroy Ziegler**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

39. Defendant is **Police Officer Shaun Parker**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

40. Defendant is **Police Officer James Weiss**, badge 0666, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

41. Defendant is **Police Officer Mark Palma**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

42. Defendant is **Police Officer Cooney**, badge number 2912, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

43. Defendant is **Police Officer Frank Bonnett**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

44. Defendant is **Police Officer Joseph Bologna**, badge number 552, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

45. Defendant is **Police Officer Lynch**, Badge Number 1386, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

46. Defendant is **Police Officer Flynn**, Badge Number 2638, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

47. Defendant is **Sergeant Giulian**, Badge Number 8838, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

48. Defendant is **Police Officer Rickman Williams-Jackson**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

49. Defendant is **Police Officer Gregory Barber**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

50. Defendant is **Police Officer Kevin Gorman**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

51. Defendant is **Police Officer John O'Hanlon**, Badge #0100, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

52. Defendant is **Police Officer Richard Kurth**, Badge #8323, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

53. Defendant is **Police Officer Thomas Kelly**, Badge #2297, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

54. Defendant is **Police Officer Thomas Kuhn**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

55. Defendant is **Police Officer Jeffrey Cujdik**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

56. Defendant is **Police Officer Richard Cujdik**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

57. Defendant is **Police Officer Kevin Cuddahy**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

58. Defendant is **Police Officer Thomas Clancy**, Badge #956, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

59. Defendant is **Police Officer Shawn Carey**, Badge #1903, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

60. Defendant is **Police Officer Thomas Tolstoy**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

61. Defendant is **Police Officer Carl Stubbs**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

62. Defendant is **Police Officer Leslie Simmons**, badge #4561, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

63. Defendant is **Police Officer Seigafuse**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

64. Defendant is **Police Officer Raymond Singleton**, badge #5014, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

65. Defendant is **Police Officer Michael Edinger**, badge #1455, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

66. Defendant is **Police Officer Hardy**, badge number 1325, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

67. Defendant is **Police Officer Christopher Brooks** Badge number unknown, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

68. Defendant is **Police Officer Thomas Wright**, Badge Number 6123, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

69. Defendant is **Police Officer Eric Dial**, Badge #6130, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

70. Defendant is **Police Officer Stephen Dmytryk,** a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

71. Defendant is **Police Officer Robert Otto,** a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

72. Defendant is **Police Officer A. Viega,** Badge #9099, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

73. Defendant is **Police Officer James Smith,** Badge #0170, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

74. Defendant is **Police Officer Eric Johnson,** Badge #8025, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

75. Defendant is **Police Officer Roosevelt Hagins, Jr.,** a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

76. Defendant is **Police Officer Harvey,** a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

77. Defendant is **Police Officer Michael Collins,** a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

78. Defendant is **Police Officer Miguel Santiago** Badge Number 5371, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

79. Defendant is **Police Officer Jones** Badge Number 9851, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

80. Defendant is **Police Officer Love,** a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

81. Defendant is **Police Officer Brant Miles,** a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

82. Defendant is **Police Officer Robert McDonnell, Jr.,** a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

83. Defendant is **Philadelphia Police Department Chemists John Does 1-22**, each is a police chemist for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

84. Defendant is **Philadelphia Police Department Chemists Jane Does 1-22**, each is a police chemist for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

85. Defendant is **Philadelphia Police Officers John Does 1-15**, each is a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

86. Defendant is **Philadelphia Police Officers Jane Does 1-15**, each is a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

## FACTUAL BACKGROUND

87. On or about September 20, 2007 in the City and County of Philadelphia and within the Eastern District of Pennsylvania Defendants Jeffrey Walker, Thomas Liciardello, Brian Reynolds, Michael Spicer, Perry Betts and other members of the narcotics strike force including other named Defendants established a narcotics investigation regarding the Plaintiff.

88. The Plaintiff was visiting his mother's house at 1505 North 18th Street in Philadelphia, PA and spending time with his cousin on September 20, 2007.

89. The Plaintiff was playing video games with his cousin during the day and at approximately 2:30pm, the Plaintiff's cousin stated he had to leave the property to pick up his minor son.

90. After his cousin left the Plaintiff went upstairs to an unoccupied room to relax before heading back to his abode at 1312 Fanshawe Street.

91. At or around 2:40pm, the Plaintiff heard loud booming sounds downstairs at the front door and when he got up to see what the commotion was encountered the Defendants.

92. As the Plaintiff stepped outside of the room he was resting in, Defendant Walker, who was less than a foot away pointed a loaded firearm at his head.

93. The Plaintiff said "get the gun out of my face" to which Defendant Walker replied "shut the fuck up".

94. Then Defendant Walker pressed the firearm against the Plaintiff's head while kneeing/kicking him in the stomach/abdomen.

95. The Plaintiff scared heard Defendant Walker say "I wannna kill you" to which he replied "Do it fuck you".

96. At this point other Defendants including Reynolds, Liciardello, and others walked upstairs.

97. The Defendants, then proceeded to search the Plaintiff's mother's house, by kicking down multiple doors and destroyed property without a justified reason, causing substantial property damage.

98. The Defendants failed to produce any search warrant or other legal instrument proving the Defendants were legally allowed to search the premises.

99. Defendants Walker and Reynolds later forged a search warrant hours after the initial search occurred.

100. Defendants Walker and others testified during the Plaintiff's criminal proceedings, that Walker saw Plaintiff run from a room, and after a subsequent search found narcotics including Percocet, oxycodone, cough syrup, and other substances, and firearms.

101. The Plaintiff denies he ever ran from any room and asserts he never even stepped outside the one he was resting in as he walked out Defendant Walker immediately confronted him with a loaded firearm pointed at his head.

102. Defendants including Walker and Reynolds, later claimed to find in the Plaintiff's mother's home a notice for traffic court addressed to the Plaintiff and used this as proof of residence.

103. The Plaintiff during all times relevant for this matter had not owned nor previously owned any motor vehicle, nor had ever driven one, and had no interaction with the Philadelphia Parking Authority.

104. The Plaintiff was convicted due to this testimony and evidence provided by the Defendants and served six years in prison before having his conviction overturned and then pled no contest to the overturned charges and received a one to eight-year sentence.

105. On March 6, 2015, the Philadelphia Court of Common Pleas granted the Plaintiff's Post-Conviction Relief Act Petition for a new trial and nolle prosequi all the remaining charges.

## LIST OF RICO PREDICATE ACTS

106. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

107. **Wire Fraud**: The following were acts of wire fraud which were committed due to the Defendant's purposeful conduct in deceiving the court and obstructing the administration of the court and knowingly and purposefully caused an electronic entry to be created:

    a. On or about September 21, 2007 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

    b. On or about September 24, 2007 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

c.  On or about September 26, 2007 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

d.  On or about December 13, 2007 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

e.  On or about December 21, 2007 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

f.  On or about December 31, 2007 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

g.  On or about January 3, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal"

which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

h. On or about January 31, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

i. On or about February 7, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

j. On or about March 17, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

k. On or about March 24, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

l. On or about June 16, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public

viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

m. On or about June 17, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

n. On or about June 23, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

o. On or about June 24, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

p. On or about June 25, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

q. On or about June 26, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

r. On or about June 27 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

s. On or about June 30, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

t. On or about July 2, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

u. On or about July 3, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which

involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

v. On or about August 12, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

w. On or about August 18, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

x. On or about October 20, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

y. On or about December 4, 2008 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

z. On or about February 2, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for

public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

aa. On or about February 17, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

bb. On or about February 18, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

cc. On or about March 26, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

dd. On or about April 22, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

ee. On or about April 23, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

ff. On or about May 21, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

gg. On or about June 4, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

hh. On or about June 9, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

ii. On or about June 16, 2009 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which

involves telephone and other interstate communication methods, and which the Defendants knew through their unlawful conduct would be created.

108. **Mail Fraud**: The following were acts of mail fraud which were committed due to the Defendant's purposeful conduct in deceiving the court and obstructing the administration of the court and knowingly and purposefully caused an object to be placed into the United States mail:

   a. On September 24, 2007, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

   b. On September 26, 2007, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

   c. On December 13, 2007, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

   d. On December 31, 2007, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

   e. On January 31, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

   f. On February 7, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

   g. On March 24, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

   h. On June 16, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

   i. On June 23, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

j.  On June 24, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

k.  On June 25, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

l.  On June 26, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

m.  On June 27, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

n.  On June 30, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

o.  On July 2, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

p.  On July 3, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

q.  On August 12, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

r.  On August 18, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

s.  On October 20, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

t.  On December 4, 2008, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

u.  On February 2, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

v.   On February 17, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

w.   On February 18, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

x.   On March 26, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

y.   On April 22, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

z.   On April 23, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

aa.  On May 21, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

bb.  On June 4, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

cc.  On June 9, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

dd.  On June 16, 2009, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

## COUNT 1 –
Acquisition and Maintenance of an Interest in and Control of an *Enterprise* Engaged in a *Pattern of Racketeering Activity*:18 U.S.C. §§ 1961(5) and 1962(b)

109. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

110. At various times and places enumerated in Plaintiff's material, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO *enterprise* of individuals who were

associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961 (4), (5), (9), and 1962 (b).

111. During the fifteen (15) calendar years preceding the date of this filing, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961 (1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(b) (Prohibited activities).

112. Plaintiff further alleges all Defendants acting together and in concert, did commit at least two (2) and averred more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. § 1962(b) *supra*.

113. Pursuant to the original Statutes at Large and via their related case law progeny, the RICO laws itemized above are to be *liberally* construed by this honorable Court. Said construction rule was never codified in Title 18 of the United States Code, however. See 84 Stat. 947, Sec. 904, Oct. 15, 1970.

### COUNT 2-
Conduct and Participation in a RICO Enterprise through a Pattern of Racketeering Activity

114. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

115. At various times and places enumerated in Plaintiff's complaint and supporting criminal and civil case law, all Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

116. Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ 1961 (4), (5), (9), and 1962 (c).

117. During the fifteen (15) calendar years preceding the date of this filing, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961 (1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(c) (Prohibited activities).

118. Plaintiff further alleges all Defendants did commit at least two (2) and averred more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. § 1962 (c) *supra*.

### COUNT 3-
Conspiracy to Engage in a Pattern of Racketeering Activity

119. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

120. At various times and places enumerated in Plaintiff's complaint and supporting criminal and civil case law, all Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

121. Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ 1961 (4), (5), (9), and 1962 (c).

122. During the fifteen (15) calendar years preceding June 23, 2015, all Defendants did cooperate jointly and severally in the commission of at least two (2) and averred more of the RICO predicate acts itemized at 18 U.S.C. §§ 1961 (1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(c) (Prohibited activities).

123. Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing

threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. § 1962 (c) *supra.*

## COUNT 4 – ASSAULT & BATTERY

124. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

125. Each Defendant at all relevant times owed a sworn duty and obligation to act in accordance with standard and accepted police policies and procedures and safeguard all suspected persons' civil rights, liberties, and privileges from unwarranted curtailment.

126. The Defendants directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a.  Past and future costs for medical treatment and care;

    b.  Loss of past and future earnings and earning capacity;

    c.  Loss of enjoyment of life;

    d.  Loss of enjoyment of freedom;

    e.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against all Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT 5 – FALSE ARREST

127. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

128. The Defendants collectively deprived while acting under color of law via their acts, omissions, privileges, rights, freedoms, and immunities belonging to Plaintiff.

129. The Defendants directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a. Past and future costs for medical treatment and care;

    b. Loss of past and future earnings and earning capacity;

    c. Loss of enjoyment of life;

    d. Loss of enjoyment of freedom;

    e. Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against all Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT 6 – FALSE IMPRISONMENT

130. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

131. Pennsylvania has a higher standard of protection for personal liberties, rights, and immunities than does the federal requirements[1].

132. The Defendants directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a. Past and future costs for medical treatment and care;

    b. Loss of past and future earnings and earning capacity;

    c. Loss of enjoyment of life;

    d. Loss of enjoyment of freedom;

    e. Past and future pain and suffering, inconvenience, and emotional distress

---

[1] *Commonwealth v. Gary*, 586 A.2d 887, 894-95 (Pa. 1991) (At the outset, it is important to recognize that this Court may extend greater protections under the Pennsylvania Constitution than those afforded under the U.S. Constitution)

**WHEREFORE**, Plaintiff demand judgment against all Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT 7 – MALICIOUS PROSECUTION

133. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

134. The arresting Defendants in the instant case, knowingly lacked probable cause to stop, investigate, arrest, detain, charge, attest, and testify against the Plaintiff.

135. The Defendants collectively deprived while acting under color of law via their acts, omissions, conspiracies, lack of supervision, mismanagement, policies, customs, and improper training rights, privileges, and immunities belonging to Plaintiff.

136. The Defendants directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a. Past and future costs for medical treatment and care;

    b. Loss of past and future earnings and earning capacity;

    c. Loss of enjoyment of life;

    d. Loss of enjoyment of freedom;

    e. Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against all Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT 8 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

137. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

138. The Defendants' conduct is especially egregious, extreme, and shocking because they were all tasked with upholding general society's and the Philadelphia community's public safety, general welfare, order, and laws and instead used those powers to enrich themselves by stealing and misappropriating the Plaintiff's collective property, perpetrate fraud upon the criminal tribunals with their falsified documents and testimony, and the sheer size of their conspiracy.

139. The Defendants knew pursuant to the Federal Constitution, the Commonwealth Constitution, and a litany of statutes and case law from both jurisdictions, and that Pennsylvania Courts and the Legislature have established a higher standard of protection for its citizens rights, liberties, privileges, and immunities, and the Defendants from attesting in police work and testifying in previous cases knew their conduct was unethical, unconstitutional, and illegal clearly intentionally and/or recklessly.

140. Plaintiff suffered emotional distress due to Defendants' extreme and outrageous conduct.

141. The Defendants' actions also deprived Plaintiff the opportunity for obtaining legitimate employment opportunities and additionally caused each Plaintiff, who were working when arrested, to lose their jobs, causing severe emotional trauma and anxiety due to his inability to properly provide for their respective families.

142. Plaintiff suffered severe emotional and psychological consequences and effects due to the Defendants' actions, which caused prolonged incarcerations, a place where the Defendants could reasonably foresee mental health, counseling, and psychological services are extremely limited and oftentimes below acceptable guidelines.

143. The Defendants collectively deprived while acting under color of law via their acts, omissions, conspiracies, lack of supervision, mismanagement, policies, customs, and improper training rights, privileges, and immunities belonging to Plaintiff.

144. The Defendants directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

   a.  Past and future costs for medical treatment and care;

   b.  Loss of past and future earnings and earning capacity;

   c.  Loss of enjoyment of life;

   d.  Loss of enjoyment of freedom;

   e.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against all Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT 9 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

145.  Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

146.  The Defendants collectively deprived while acting under color of law via their acts, omissions, conspiracies, lack of supervision, mismanagement, policies, customs, and improper training rights, privileges, and immunities belonging to Plaintiff.

147.  The Defendants directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

   a.  Past and future costs for medical treatment and care;

   b.   Loss of past and future earnings and earning capacity;

   c.   Loss of enjoyment of life;

   d.  Loss of enjoyment of freedom;

   e.   Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against all Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## PUNITIVE DAMAGES

148. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

149. In awarding punitive damages, "[t]he proper focus is on 'the act itself together with all the circumstances."[2]. The focus, therefore, is on the conduct, not on the excuses offered at trial. Furthermore, " '[p]unitive damages may be awarded for conduct that is outrageous, because of defendant's evil motive or his reckless indifference to the rights of others.' "[3].

150. Defendants' actions in depriving Plaintiff of their rights, freedoms, and liberties is so outrageous as to shock the conscience of reasonable persons and evidence reckless indifference for the Plaintiff's rights.

151. Municipalities and cities are liable for damages flowing from constitutional violations that it caused through the execution of its policy or custom.

152. The City of Philadelphia did that here by failing to properly train, supervise, investigate, hold accountable, prevent, and arrest a litany of rogue officers with the Narcotics Strike Force[4].

**WHEREFORE**, Plaintiff demands exemplary and punitive damages plus attorneys' fees and costs in an amount in excess of One-Hundred and Fifty–Thousand Dollars ($150,000) against all Defendants, officially, personally, professionally, individually, jointly, and severally.

## RELIEF REQUESTED

---

[2] *Rizzo v. Haines,* **520 Pa.** 484, 507, **555 A.2d 58**, 69 (1989).
[3] *Feld v. Merriam,* **506 Pa.** 383, 395, **485 A.2d 742**, 747-48 (1984).
[4] *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690-92 (1978); *see Owen v. City of Independence,* 445 U.S. 622 (1980).

153. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

154. That this Court liberally construe the RICO laws and thereby find that all Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO *enterprise* of *persons* and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 U.S.C. § 1962 (b) (Prohibited activities).

155. That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of *racketeering activity* in violation of 18 U.S.C. § 1962 (b) and from all other violation(s) of applicable State and federal law(s).

156. That judgment be entered for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(b).

157. That all Defendants pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. § 1964(c).

158. That all Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. § 1962 (b), including compensatory, exemplary, punitive, attorney's fees, interest, and any other recovery allowable pursuant to law.

159. That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. § 1962 (b) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, pending a final decision within this matter.

160. Past and future costs for medical treatment and care;

161. Loss of past and future earnings and earning capacity;

162. Loss of enjoyment of life;

163. Loss of enjoyment of freedom;

164. Punitive Damages;

165. Past and future pain and suffering, inconvenience, and emotional distress

166. All other and further relief as this Court deems just and proper.

## JURY DEMAND

167. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

168. Plaintiff demands a jury to determine the extent of damages and provide a full and fair hearing pursuant to the United States Constitutional Amendments V, VI, and XIV.

Respectfully Submitted,

/S/ David Wesley Cornish, Esquire

David Wesley Cornish, Esquire
Bar Id No: 310865
Supervising Attorney
Cornerstone Legal Group, LLC
1510 Cecil B. Moore Avenue, Suite 301
Philadelphia, PA 19121
888-313-1385
215-752-6762 (Facsimile)
**ATTORNEY FOR PLAINTIFF**

*DATE*: March 3, 2016

## VERIFICATAION OF COMPLAINT

I, Chester Brame, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Date:   March 3, 2016

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Hope Cornish, Notary Public
Bensalem Twp., Bucks County
My Commission Expires June 20, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____

Chester Brame

**Commonwealth of Pennsylvania**

**County of** _Philadelphia_

Sworn to and subscribed before me this the 3ʳᵈ day of _March_ , 2016

_____

NOTARY PUBLIC

**My Commission Expires:**

_June 20, 2016_